Argued and submitted November 28, 2006, affirmed May 2, 2007

Donald J. SHERRY,
*Petitioner,*

*v.*

BOARD OF ACCOUNTANCY,
*Respondent.*

Board of Accountancy
118002; A129193

157 P3d 1226

Stephen A. Hutchinson argued the cause for petitioner. With him on the briefs was Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Petitioner, a certified public accountant, seeks review of a final order of the Board of Accountancy (the board), which assessed a civil penalty and required him to attend four hours of ethics-based continuing professional education courses. The board's order was based on the determination that petitioner performed certain tax services for his clients pursuant to a "contingent fee" arrangement in violation of ORS 673.345(3) and OAR 801-030-0005(4) (Jan 1, 2004). As amplified below, we conclude that (1) petitioner's "Professional Service Warranty" constituted a proscribed "contingent fee" arrangement and (2) the board's determination that petitioner performed tax return preparation services for clients pursuant to such an arrangement is supported by substantial evidence and comports with substantial reason. Accordingly, we affirm.

We review the board's conclusions of law for legal error, ORS 183.482(8)(a), and its factual findings for substantial evidence, ORS 183.482(8)(c). Consistently with the latter standard, the following facts, as found in the board's final order, are supported by substantial evidence.

Petitioner has been certified by the board since 1999. In early 2004, petitioner distributed a flyer in a local newspaper advertising his services. The flyer promised a "Professional Service Warranty which *guarantees you the largest refund possible with the lowest tax liability or our services are free.*" (Emphasis added.)

Potential clients responded to the flyer and engaged petitioner to prepare tax returns. Petitioner intended to honor the terms of the "Professional Service Warranty"; specifically, if a client had been able to demonstrate that a tax return prepared by petitioner had not resulted in "the largest refund possible with the lowest tax liability," petitioner would have refunded that client's fees. However, no client ever sought to avoid payment or to obtain a refund under the terms of the "Professional Service Warranty."

Shortly after petitioner caused the flyer to be distributed, the board received a complaint alleging that the

"Professional Service Warranty" violated prohibitions against false and misleading advertisements and against providing tax return preparation services on a "contingency fee" basis. The board informed petitioner of the complaint, and he responded. After an investigation, the board issued a notice of proposed civil penalty for use of false or misleading advertising and for violation of ORS 673.345(3) and OAR 801-030-0005(4) (Jan 1, 2004),[1] which, as described in detail below, prohibit certified public accountants from performing services pursuant to a "contingent fee" agreement.[2]

Petitioner requested and received a hearing, and an administrative law judge (ALJ) issued a proposed order. In the proposed order, the ALJ determined that petitioner had violated ORS 673.345(3) and OAR 801-030-0005(4) (Jan 1, 2004) and that the sanction proposed by the board—a $500 civil penalty and four additional hours of continuing professional education—was appropriate. Petitioner submitted exceptions to the proposed order, and the board subsequently issued a final order, which substantially adopted the proposed order. The core of the board's reasoning was as follows:

"The Board concludes that Respondent charged fees for the preparation of tax returns, contingent on his services producing the lowest tax liability and the highest tax refund, in violation of the OAR 801-030-0005(4)(c)(B). Respondent admitted the wording [of the 'Professional Service Warranty'] could be misconstrued, and that he would have refunded fees, if a client had been able to demonstrate that the condition precedent, a determination of lower tax liability for the client, had been met. Respondent admitted to providing services to customers who responded to the advertising flyer, and to his intention to honor the promise of a refund if the conditions were met. We infer that Respondent provided services pursuant to the contingent

---

[1] The 2004 version of the rule was effective at the time the board issued its final order. However, the rule was amended, altering some of the language, in September 2005. Those amendments became effective January 2006, seven months after the board's final order in this case. The 2006 amendments did not materially alter the substance of the rule.

[2] Ultimately, the board withdrew the false advertising allegation. That matter is not at issue on judicial review.

offer made in the flyer. Therefore, the Board concludes that Respondent's provision of services under the wording of the advertisement flyer was a provision of services under a contingency fee agreement.

"The Board has considered Respondent's exceptions, but does not find them persuasive. Respondent asserts that his testimony that he did not prepare tax returns for a contingent fee was unchallenged and that no client 'signed or asked for' a contingent fee. (Exceptions at 1). On the contrary, Respondent testified that potential clients responded to his flyer and that he served clients with the intention of honoring the advertised offer. The fact that no client demanded a refund does not nullify the fact that Respondent established his fees for tax services pursuant to an arrangement in which no fee would be charged unless a specified result—the lowest possible liability and largest possible refund—was obtained. Respondent offered a contingent fee for the work and clients engaged him under that arrangement, which he intended to honor. If that were not the case, Respondent's advertisement would have been patently false."

(Footnote omitted.)

On judicial review, petitioner raises two principal contentions. First, he asserts, the board erred as a matter of law in concluding that the "Professional Service Warranty" constituted a "contingent fee" arrangement within the meaning of ORS 673.010(8) and ORS 673.345(3). Second, petitioner contends that, even if the "Professional Service Warranty" described in the abstract a "contingent fee," there is no evidence, much less substantial evidence, that he ever actually provided tax return preparation services for clients pursuant to an agreement that included that "warranty" as a material term. We address, and reject, each of those challenges in turn.

Petitioner's first, definitional contention presents a straightforward question of statutory construction. Accordingly, we begin by examining the pertinent statutory text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

ORS 673.345(3) provides, in part:

"A holder of a permit [to engage in the practice of public accountancy] * * * may not prepare for a contingent fee an original or amended tax return or a claim for a tax refund for any client."

ORS 673.010(8) defines "contingent fee" as

"a fee established for the performance of any professional service and directly or indirectly paid to a licensee *pursuant to an arrangement in which no fee will be charged unless a specified finding or result is attained,* or in which the amount of the fee is otherwise dependent upon the finding or result of such service. The board by rule may further define 'contingent fee.' A fee is not contingent if the fee:

"(a)    Is fixed by courts or other public authorities; or

"(b)    In tax matters, is determined based on the results of judicial proceedings or the findings of governmental agencies."[3]

(Emphasis added.) The pertinent portions of the applicable administrative rule, OAR 801-030-0005(4) (Jan 1, 2004), are virtually identical to those statutes.[4]

---

[3] The "contingent fee" definition in ORS 673.010(8) and the "contingent fee" provisions of ORS 673.345 were added to ORS chapter 673 in 1999 and 2001. Or Laws 1999, ch 322, § 2; Or Laws 2001, ch 313, §§ 1, 2. Both were derived, albeit not verbatim, from the Uniform Accountancy Act (UAA), sections 14(o)(3) and 14(o)(1)(B), respectively. Those sections of the UAA are, in turn, derived from the American Institute of Certified Public Accountants' (AICPA) Code of Professional Conduct, Rule 302. The commentaries for those sources do not address their application to "guaranteed refund" arrangements. The parties here have not identified, and we have been unable to find, any legislative history pertaining to that matter.

[4] OAR 801-030-0005(4) (Jan 1, 2004) provided, in part, as follows:

"Contingent fees. Certified public accountants, public accountants and firms in the practice of public accountancy may perform professional services for a client in exchange for a contingent fee subject to the requirements of ORS 673.345 and this rule.

"(a) Definitions.

"(A) A contingent fee is a fee established for the performance of any professional service and directly or indirectly paid to a licensee pursuant to an agreement in which no fee will be charged unless a specified finding or result is attained, or in which the amount of the fee is otherwise dependent upon the finding or result of such service.

"* * * * *

"(c) Prohibited contingent fees.

■      Petitioner first contends that the "Professional Service Warranty" was not, and could not be, a "contingent fee" arrangement because it contemplates that, if the client could demonstrate that the services did not achieve the promised result, petitioner would *refund* the fee. That is, in petitioner's view, the "warranty" is, at most, a "money back guarantee"— and such an arrangement necessarily assumes that the client has paid a fee: "What the advertisement states is that monies *already charged* may be refunded." (Petitioner's emphasis.) In sum, petitioner contends that a "contingent fee" arrangement means that no payment is made for performance of professional services unless or until a specified result is obtained. Conversely, if payment is made, even if the professional's ultimate entitlement to retain that fee depends on some specified condition, the payment is not a "contingent fee."

The board remonstrates that petitioner conveniently recasts the "warranty" and construes the statute in such a way as to elevate form over substance, sanctioning subterfuge. The board emphasizes that the "warranty" does not state that "monies already charged may be refunded"; rather, it guarantees that petitioner's services will achieve a particular result—"the largest refund possible with the lowest tax liability"—or "our services are *free*." (Emphasis added.) In that event, the board asserts, the client ultimately will have no obligation to pay and, thus, ultimately "no fee will be charged." In a related sense, the board suggests that petitioner's construction of ORS 673.010(8) and ORS 673.345 would allow practitioners to subvert the statutory policy—a policy of prohibiting accountants, with respect to the performance of certain services, from basing their fees on results

---

"* * * * *

"(B) A certified public accountant, public accountant or firm in the practice of public accountancy may not prepare an original or amended tax return or a claim for a tax refund for any client in exchange for a contingent fee.

"* * * * *

"(f) Contingent fee transactions not prohibited. Fees are not contingent if fixed by courts or other public authorities, or in tax matters if such fees are determined based on the results of judicial proceedings or the findings of governmental agencies."

obtained—simply through the ploy of inverting the "contingency," *i.e.*, by promising a refund if the contingency did not occur, rather than not requiring payment until the contingency did occur.

We proceed to context. Several provisions are instructive. First, and most proximately, the operative language, "in which no fee will be charged unless a specified finding or result is obtained," must be juxtaposed with the immediately adjacent and interconnected phrase, "or in which the amount of the fee is *otherwise* dependent upon the finding or result of such service." (Emphasis added.) "Otherwise," as so used, necessarily refers to the circumstances described in the first phrase—and, in so doing, functionally equates "fee * * * charged" with "the amount of the fee." So understood, a "contingent fee" arrangement is one by which either (1) the professional is not entitled to receive a fee "unless a specified finding or result is obtained" or (2) the professional's fee will "otherwise" vary depending on the results achieved.

That formulation corroborates the board's construction. The statutory design focuses on the contingent nature of the accountant's ultimate entitlement to the fee, and not on the timing of the payment for professional services.

Other aspects of statutory context, including other provisions of ORS 673.345 prohibiting "contingent fee" arrangements, confirm that the *sine qua non* of a "contingent fee" agreement is whether the accountant's ultimate entitlement to a fee depends on the results achieved. Significantly, subject to certain exceptions, including the prohibition in ORS 673.345(3), accountants are generally permitted to enter into "contingent fee" arrangements in relation to the performance of services. ORS 673.345(2)(a) provides:

"A holder of a permit under ORS 673.150 or a business organization registered under ORS 673.160 may:

"(A) Perform for a contingent fee any professional service for a client; or

"(B) Receive a contingent fee for any professional service performed for a client."

Thus, subject to specified exceptions, accountants may perform professional services for a contingent fee and receive a contingent fee for services performed.[5]

In addition to the exceptions stated in ORS 673.345(3), paragraph (2)(b) provides:

"Notwithstanding paragraph (a) of this subsection, a holder or business organization may not accept a contingent fee under paragraph (a) of this subsection from a client for whom the holder or business organization, or any of the partners, officers, shareholders, members, managers or owners of the holder or business organization, performs:

"(A)   *Client attestation services*; or

"(B)   A compilation of a financial statement for the client, if the compilation report does not disclose a lack of independence."

(Emphasis added.) "Attestation" for these purposes means:

"[T]he opinion of a licensee as to the reliability or fairness of information that is used for guidance in the financial transactions of, accounting for or assessing the status or performance of, commercial and noncommercial enterprises, whether public or private, following the completion of an audit, in accordance with generally accepted accounting and auditing standards."

ORS 673.010(1).

The thrust of the paragraph (2)(b) exceptions is that accountants who render certain opinions on behalf of a client, on which the client and others are expected to rely, are prohibited from having a "piece of the action" in that client's affairs by way of "contingent fee" arrangements. That is, the accountant's professional role as an honest and neutral actor in those circumstances is not to be compromised, even potentially, by the fact that his or her income may depend on the outcome or consequences of his or her work.

---

[5] Unlike the other "contingent fee" provisions of ORS 673.345, paragraph (2)(a) was not derived from the UAA. *See* 212 Or App at 355 n 3. The "perform" and "receive" formulations appear to be congruent. The legislative history does not disclose why the Oregon legislature opted for such a "belt and braces" approach.

Again, that context supports the board's construction and application of ORS 673.010(8) and ORS 673.345(3) in this case. For purposes of the prohibition on "contingent fee" arrangements, it makes no ultimate difference, functionally, whether an accountant who performs "client attestation" services (a) agrees with the client that no fee must be paid unless a specified contingency occurs or (b) gives a "money back guarantee" in the event that that contingency does not occur. The "vice"—the potentially compromising entanglement of self-interest—is the same.

We note, finally, by way of analogy—if not precise *PGE* "context"—parallels in prohibitions on certain "contingent fee" arrangements in the legal profession. Specifically, Oregon Rule of Professional Conduct 1.5(c) provides:

> "A lawyer shall not enter into an arrangement for, charge or collect:
>
> "(1)   any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of spousal or child support or a property settlement; or
>
> "(2)   a contingent fee for representing a defendant in a criminal case."

Arrangements by which a lawyer promised "You get the house, or my services are free" or "Acquittal or your money back" would, doubtless, run afoul of those prohibitions. *See, e.g., Louisiana State Bar Ass'n v. Nader*, 472 So 2d 11, 13 (1985) (lawyer's promise of a "refund" of fees if he did not achieve a particular result violated the prohibition on contingent fee arrangements in criminal cases: "[A] promise to refund [a] fee if the promised outcome is not achieved * * * is * * * clearly a contingent fee arrangement.").

The same is true here. The proper focus under ORS 673.010(8) and ORS 673.345 is not on *when* petitioner received payment for services, but, rather, on whether his ultimate fee entitlement was contingent. Because here petitioner's ultimate entitlement to payment is dependent on the "result" of his services, the "or our services are free" promise described a "contingent fee" arrangement for purposes of those statutes. The board correctly so concluded.

Petitioner contends, nevertheless, that the "Professional Service Warranty" is not a "contingent fee" device for a second reason, *viz.*, that it merely states that he "will provide what every accountant is expected to deliver to his or her clients"—that is, it is simply a "promise of competent performance" and a promise to "provide services to the best of [his] ability"—and not of a "specified result." Again, petitioner's characterization of the warranty is selectively self-serving. "[T]he largest refund possible" coupled with the "lowest tax liability" is, in fact, a "specified result"—as opposed to generic promises of competent and diligent performance—and petitioner's fee entitlement was contingent upon achieving those results.

Finally, with respect to the statutory definition of "contingent fee," petitioner asserts that the "Professional Service Warranty" here falls within the exception for fees "[i]n tax matters [that are] determined based on the results of judicial proceedings or the findings of governmental agencies." ORS 673.010(8)(b). Petitioner apparently reasons that, because the Internal Revenue Service and state revenue departments are "governmental agencies," the client's entitlement to a refund of fees based on the "largest refund possible with the lowest tax liability" benchmark depends on the "findings" of such "agencies." Again, that argument is unavailing.

Petitioner's proposition fails in the first instance because, if true, it would render the prohibition in ORS 673.345(3) a nullity. "Contingent fee" arrangements with respect to tax return preparation services will, necessarily, depend on determinations by federal and state revenue authorities. Beyond that, as noted, the definition of contingent fees in ORS 673.010(8) is derived from UAA, section 14(o)(3), which, in turn, was derived from the AICPA's Code of Professional Conduct, Rule 302(2). *See* 212 Or App at 355 n 3. The commentary to Rule 302 describes the scope of that exemption:

> "A fee is considered determined based on the findings of governmental agencies if the member can demonstrate a reasonable expectation, at the time of a fee arrangement, of substantive consideration by an agency with respect to the

member's client. *Such an expectation is deemed not reasonable in the case of preparation of original tax returns."*

(Emphasis added.) Thus, ORS 673.010(8)(a) and (b) are inapposite here.

We turn to petitioner's second principal argument. Petitioner contends that, even assuming the "Professional Service Warranty" describes a "contingent fee" arrangement, there is no evidence, much less substantial evidence, that he ever actually performed services pursuant to such an arrangement. Specifically, petitioner contends that, because his flyer was not an "offer" capable of acceptance, and because the terms of the flyer were not incorporated into his subsequent written agreements with his clients, the terms of the flyer never became a term of his contracts with his clients.

■ An advertisement may or may not, depending on various circumstances, constitute an offer. *See Kane v. League of Oregon Cities*, 66 Or App 836, 840, 676 P2d 901, *rev den*, 296 Or 829 (1984) (citing *Restatement (Second) of Contracts* § 26 (1981)). As the *Restatement* explains, advertisements of goods and services "are not ordinarily intended or understood as offers." *Restatement* at § 26 comment b. However, under certain circumstances, depending on the language of the advertisement itself, it is "possible to make an offer by an advertisement directed to the general public." *Id. Accord Kane*, 66 Or App at 840 (concluding that, because no "reasonable person in the position of [the] plaintiff would have been led to believe that [the] defendants' announcement was an offer," the plaintiff's purported "acceptance" did not form a contract).

Here, the board based its finding that petitioner had, in fact, performed services pursuant to the terms of the "Professional Service Warranty" on three predicate factual determinations: (1) prospective clients contacted petitioner's office in response to the advertising flyer that included the "warranty"; (2) petitioner did, in fact, perform tax return preparation services for at least some of those individuals; and (3) petitioner remained committed throughout to honoring the terms of the "warranty." Each of those predicate findings

is supported by substantial evidence—and we do not understand petitioner to contend otherwise. Specifically, at the hearing, petitioner testified as follows:

"Q. And so did you intend to adhere to th[e] professional service warranty when you advertised it?

"A. As a warranty, yes.

"\* \* \* \* \*

"Q. And did anybody bring this little flyer into your office and say, 'I saw your ad, and I want you to do my taxes'? Or anything close to that?

"A. We had clients respond to the flyer and contact us to provide services.

"Q. Okay. And so I guess then did you subsequently provide tax services to those clients?

"A. Yes[.]

"\* \* \* \* \*

"Q. \* \* \* So when you used the flyer, did you have an intention to honor that professional service warranty?

"A. The warranty, yes.

"\* \* \* \* \*

"Q. And so if [clients] brought their refund back to you and demonstrated that you did not get them the lowest tax liability, would you have refunded your fee?

"A. Yes."

The question thus narrows to whether those facts rationally support the board's ultimate inference that the "Professional Service Warranty" was a material term of petitioner's agreement, with at least one client, to provide tax return preparation services. In *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271-72, 639 P2d 90 (1981), the court described the scope of our review in such circumstances:

"The substantial evidence rule is not entirely dispositive in reviewing findings which embody inferences. An inference has two parts: a primary fact plus a deduction.

The evidence directly establishes only the truth of the primary fact or facts from which an inference may be derived therefrom. Rational bases may exist for more than one inference to be drawn from the same primary fact, and the factfinder (*i.e.*, the agency) has the task to decide which one to draw. The court does not substitute its judgment as to which inference should be drawn, but it must review for the existence of a rationale. The rationale is reviewed for soundness, not for conformity to judicial preference. Judicial review of an inference is thus in two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether there is a basis in reason connecting the inference to the facts from which it is derived. It is a twofold review for substantial evidence and, in a sense, for 'substantial reason[.]'

"On judicial review, the court will not substitute its judgment for that of the agency in drawing an inference, but the court must be satisfied that agency judgment has actually been exercised."

(Citations omitted.)

■      Here, petitioner contends that the board's ultimate inference does not comport with substantial reason. In that regard, petitioner emphasizes that there is no evidence that the "Professional Service Warranty" was included as a term of any written agreement with any client and that no client ever demanded a refund pursuant to the "warranty." We disagree.

We note, at the outset, that the board was not obligated to credit petitioner's testimony that his oral or written agreements with clients did not "specifically" "incorporat[e] th[e] flyer language." Indeed, petitioner did not present as exhibits copies of any written agreements for tax return preparation services—and, in all events, petitioner identified nothing in those written agreements that precludes the existence of additional terms. The mere existence of subsequent written agreements with clients does not preclude the possibility of additional terms or make the board's inference unreasonable.[6]

---

[6] Neither party has invoked the parol evidence rule or discussed its application to this case. There is no discussion in the record or briefs, and there is no evidence in the record, regarding whether the written agreements described were

Petitioner's reliance on the undisputed evidence that no client withheld payment or demanded a refund based on the "warranty" is similarly unavailing. The absence of client "enforcement" could be the result of a variety of circumstances, any of which would not contradict the board's ultimate inference, including (a) petitioner did, in fact, achieve the promised "contingent" result and, thus, was entitled to the fee; (b) petitioner failed to achieve the specified result, but the client was ignorant of that failure; or (c) petitioner failed to achieve the specified result, and the client elected not to pursue the matter.[7]

Conversely, regardless of when, precisely, an "offer" and "acceptance" took place, the board could reasonably infer from the predicate facts that petitioner did, in fact, provide services pursuant to an agreement that incorporated the payment terms specified in the advertising flyer. In particular, the fact that clients retained petitioner after responding specifically to the flyer with its "or our services are free" language and the fact that petitioner intended throughout to act in accordance with that representation reasonably supports an inference that the parties mutually understood that the promise of "the largest refund possible with the lowest tax liability or our services are free" was a material term of the agreement for provision of professional services. The board's analysis and result comport with substantial reason.

Affirmed.

---

integrated" for purposes of that rule. Again, the written agreements are not in the record and we express no further opinion on their relevance.

[7] In a related sense, petitioner contends that, absent evidence that he actually refunded a client's money, "speculation" that he would, in fact, have done so is insufficient to prove that he acted pursuant to a "contingent fee" arrangement. Petitioner misapprehends the board's analysis. The board did not base its determination on some prediction of petitioner's putative future conduct. Rather, the board focused, appropriately, on petitioner's admitted intent to honor the "warranty" as being probative of his understanding of his enforceable obligations to his clients.